## MORRILL'S HEIRS v. SCOTT et al.

### (Circuit Court, D. West Virginia. May 3, 1894.)

TAXATION—REDEMPTION—GRANTS BY STATE AFTER FORFEITURE.

After the passage of Act Va. Feb. 12, 1844, authorizing previous owners of certain lands forfeited to the state for nonpayment of taxes to redeem them on or before June 1, 1845, but saving the rights of any person having legal or equitable title to any of the lands by subsequent grant or otherwise, grants of said lands were obtained from the state, before June 1, 1845, upon entries and surveys made before the act. *Held*, that the grants conferred no title, as against a redemption pursuant to the act, because lands so forfeited to the state were not at that time subject to entry and grant, and under Act March 28, 1843, vesting all the state's right to such lands delinquent before January 1, 1845, in persons having title or claim under grant from the state previous to that date who should have paid the taxes, the forfeiture did not become absolute until after the passage of Act Feb. 12, 1844.

Action of ejectment by the heirs of Morrill against Scott and others, for lands claimed by plaintiffs under a patent from the commonwealth of Virginia, and by defendants under subsequent grants from the commonwealth made after the lands had become delinquent and forfeited for nonpayment of taxes.

Act Va. March 28, 1843, § 1, provided that "all the right, title, and interest which shall be vested in the commonwealth in any lands or lots lying west of the Alleghany mountains, by reason of the nonpayment of the taxes heretofore due thereon, or which may become due on or before the first day of January, 1845, * * * shall be and the same are hereby absolutely transferred and vested in any person or persons (other than those for whose default the same may have been forfeited, their heirs or devisees) for so much as such person or persons may have just title or claim to, legal or equitable, claimed, held, or derived from or under any grant of the commonwealth, bearing date previous to the first day of January, 1845, who shall have discharged all taxes duly assessed and charged against him or them upon such lands, and all taxes that ought to have been assessed or charged thereon from the time he, she, or they acquired title thereto, whether legal or equitable."

Couch, Flournoy & Price, for plaintiffs.
Johnson & Riley, for defendants.

JACKSON, District Judge. This is an action of ejectment brought by the plaintiffs to recover certain lands claimed by the defendants, who are in actual possession under color of title. The plaintiffs derived title to the land in controversy by mesne conveyances from the grantee of the patent issued by the commonwealth of Virginia February 10, 1786. The title to the land continued and remained in the plaintiffs and those under whom they claim, unless it was forfeited under the act of 1835, when it would become vested again in the commonwealth of Virginia, as forfeited and delinquent lands, and not as waste and unappropriated lands; the same having been previously granted, whereby the original title to the lands passed out of the commonwealth to the grantee, under the patent

issued in 1786. By the act of the Virginia legislature passed February 27, 1835, "all lands and lots returned delinquent for the nonpayment of taxes, west of the Alleghany mountains," became forfeited unless redeemed before the 1st day of November, 1836, when the forfeiture became absolute, and the land so forfeited passed by operation of law, and vested in the commonwealth, for the benefit of the president and directors of the literary fund. Staats' v. Board, 10 Grat. 400; Wild's Lessee v. Serpell, Id. 405; Hale v. Branscum, Id. 418. After the forfeiture became complete the title would remain and continue in the state, unless redeemed or transferred under legislative sanction.

It appears from the evidence in this case that the lands now in controversy were forfeited under the act of 1835, and that the forfeiture became absolute the 1st day of November, 1836, whereby the title to them vested in the commonwealth. During the time the lands were held by the commonwealth, Thomas Coleman and Henry Sherman, two of the defendants, obtained grants from the commonwealth on the 29th of June, 1844, upon entries and surveys made in 1843. Charles Smith, another defendant, obtained his grant for the land he claimed September 20, 1844. But before the defendants obtained their grants, and while their title was in an inchoate condition, the legislature, by a private act passed February 12, 1844, authorized the previous owners to redeem the lands by the payment into the treasury of the commonwealth of all taxes due thereon on or before the 1st day of June, 1845. It is conceded that this act was complied with by the payment of all back taxes into the treasury of the state before that time. There was, however, a saving in the act to any person having legal or equitable title to any of the lands by virtue of subsequent grant or otherwise.

This brings me to the consideration of the legal effect of this act; and the first question that presents itself is, were these lands liable to entry and survey, and subject to grant? As we have before seen, they were granted by the commonwealth of Virginia in 1786, when the title passed out of the state, and so remained until she was reinvested with it under the act of 1835, holding them as forfeited and delinquent lands; and she so held them down to the time she relinquished her right to them by the act of February 12, 1844. At no time since the grant of 1786 were they ever held as waste and unappropriated lands, and as such liable to survey, entry, and grant. It is evident that they could not be granted as waste and unappropriated lands; and, if liable to entry, it must be because the state held them as forfeited lands, and, by legislative enactment, made them subject to entry and grant after the forfeiture. But since the lands became forfeited, and during the time the title was in the state, there was no act of the legislature in existence that authorized the entry of forfeited lands. In fact, a grant for land forfeited for nonpayment of taxes was unauthorized by any law prior to the Code of 1849. Atkins v. Lewis, 14 Grat. 30. It is true that forfeited and delinquent lands have been in some, possibly in a number of, instances, surveyed, entered, and carried into grant; but in no instance were these grants ever held valid by the courts except where

the legislature relinquished the right of the state to the land. Such was the effect of the decision of the court in the case of Levasser v. Washburn, 11 Grat. 572. If this position be correct, it must follow that the lands granted to the defendants by their patents passed no title to them, in the absence of any law either authorizing them to enter the lands, or confirming their title to them.

But it is claimed that, though the patents were void, yet because they were founded upon entries made prior to the act of February 12, 1844, and carried into grant before the 1st day of June, 1845, they conferred an equitable title upon the defendants, which is within the saving clause of the act of 1844, and should avail them to defeat the recovery in this action. I do not think this is now an open question, since the decision of Atkins v. Lewis, before referred to. But, if it was, the plain answer to this position seems to be that, while the title to the lands remained in the commonwealth, her legislature has both the power and legal right to dispose of them as it deemed best for her interest. This was done by the act of 1844, while she was fully invested with the legal title; and whatever claims the defendants had were mere inchoate rights, which the state might refuse to recognize. No one could question the right of the legislature, after the passage of the act of 1844, and before the 1st day of June, 1845, to pass an act to repeal the law creating the land office in the state; and, if it was done, all inchoate rights would cease, unless specially provided for. If the state could, by a proper enactment, do this, clearly she would have the right to restore lands to the previous owner upon any terms she chose to impose, even where, under her laws, the rights of third parties began to intervene, which were in an inchoate condition, and before she had divested herself of title to them. In view of what I have said, it is apparent that the state, by the act of 1844, abrogated the forfeiture, and released the lands, upon the payment of all the taxes due her June 1, 1845.

It is, however, insisted, with some show of plausibility, that the defendants are protected by the act of March 28, 1843. The answer to this position is that by the terms of that act the forfeiture was not complete and absolute before the 1st of January, 1845, and the redemption of the lands in question having been authorized before that time, under the act of 1844, there was no legal title in the state to transfer and vest in any one. If the defendants had obtained their grants before the passage of that act relinquishing the right of the state to them, the question presented would be far different; and under the decision in the case of Hale v. Branscum, 10 Grat. 418, the defendants might be entitled to hold the land embraced by their patents, if such lands were liable to entry. If, however, the later decision of the same court, in the case of Atkins v. Lewis, is law (before cited in 14 Grat.), which decided that there was no statute of the state that authorized the entry and granting of delinquent and forfeited lands at the time the defendants made their entries upon which they obtained their grants, then, and for this reason, the grants were void, and conferred no title whatever upon the defendants claiming and holding under them.

For the reasons assigned, I reach the conclusion that the lands in question were forfeited under the act of 1835, and that the forfeiture became absolute in November, 1836; that after the forfeiture occurred the title to the lands remained in the state until June 1, 1845; that the entries made, and the grants issued thereon, by the state to the defendants, passed no title, because the grants were secured after the passage of the act of 1844, which authorized the redemption; that the lands were not subject to entry and grant, and that the act of 1843 does not apply to this case, because the forfeiture could not become absolute after the passage of the act of February 12, 1844, until and after the time fixed for the redemption transpired, for the reason that the prior owners had an equity of redemption in the lands until June 1, 1845, when the taxes were to be paid into the treasury, which being done, reinvested them with the legal title, during which period the rights of the defendants, if any they had, were suspended.